IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| KRAFT HEINZ FOODS COMPANY, a Pennsylvania limited liability company, | ) ) ) | |
| Plaintiff, | ) ) | |
| vs. | ) ) | No. |
| GROOME INDUSTRIAL SERVICE GROUP LLC, a New Jersey limited liability company, | ) ) ) ) | |
| Defendant. | ) | |

**KRAFT HEINZ FOODS COMPANY'S COMPLAINT AT LAW**

Plaintiff, Kraft Heinz Foods Company ("Kraft Heinz"), by its undersigned counsel, states as follows for its Complaint at Law against Defendant, Groome Industrial Service Group, LLC ("Groome"):

**BACKGROUND**

1. Kraft Heinz seeks in this action to recover substantial damages it has incurred due to a recall of dry powder beverage products caused by Groome's negligence in performing specialized cleaning services that introduced foreign material into certain of Kraft Heinz's products.

2. Kraft Heinz is the third-largest food and beverage company in the United States, with dozens of brands known and trusted by generations of consumers, including *Kraft*, *Heinz*, *Oscar Mayer*, *Philadelphia*, *Ore-Ida*, *Lunchables* and many others.

3. Kraft Heinz's portfolio also includes numerous iconic beverage brands, such as *Kool-Aid*, which consumers have been enjoying for nearly one hundred years, *Tang*, which

accompanied the astronauts on space flights beginning in the 1960s, and *Country Time Lemonade*, which has been a summertime staple for nearly fifty years.

4. Kraft Heinz is a limited liability company organized under the laws of Pennsylvania with co-headquarters in Chicago, Illinois and Pittsburgh, Pennsylvania. Kraft Heinz's members are Kraft Heinz Intermediate Corporation II and HJH Development Corporation, both of which are Delaware corporations with principal places of business in Pittsburgh, Pennsylvania.

5. At all relevant times, Groome held itself out to Kraft Heinz as providing specialized silo cleaning services and represented to Kraft Heinz that its employees were trained, qualified, competent and experienced to perform such cleaning services.

6. Groome is a New Jersey limited liability company organized under the laws of the state of New Jersey, with its principal place of business in Fairfield, New Jersey. Groome is registered to do business in Illinois, but, on information and belief, Groome's members are not citizens of Illinois, Delaware, or Pennsylvania.

**JURISDICTION AND VENUE**

7. This Court has subject matter jurisdiction over this dispute pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship between the parties and the amount in controversy exceeds $75,000.

8. Personal jurisdiction exists over Groome because it purposely availed itself of the laws of this jurisdiction and consented to jurisdiction by entering into an agreement with Kraft Heinz and agreeing to be governed by the "Standard Terms and Conditions of Purchase – United States" ("Terms"). A true and correct copy of the Terms are attached hereto as **Exhibit A**.

9. The Terms state that the "Laws applying to contracts made and fully performed in the State of Illinois will govern… any legal action or proceeding arising out of or relating to the

[agreement for services] will be brought exclusively in the U.S. District Court for the Northern District of Illinois… and each party irrevocably submits to the sole and exclusive jurisdiction of these courts in any action or proceeding." (Exhibit A, p. 4 ¶ 11.)

10. Venue in the District Court for the Northern District of Illinois is proper pursuant to 28 U.S.C. §1391(b)(1) and §1391(c)(2) because Groome is an entity with the capacity to sue and be sued under applicable law and deemed to reside in any judicial district in which such defendant is subject to the court's personal jurisdiction. Here, Groome has submitted and consented to the personal jurisdiction of the U.S. District Court for the Northern District of Illinois.

## NATURE OF THE ACTION

11. This action arises from Groome causing the introduction of foreign material into certain of Kraft Heinz's dry powder beverage products following Groome's cleaning of a Kraft Heinz fructose storage silo at its manufacturing facility in Dover, Delaware. Groome, a specialty industrial maintenance company, cleaned the silo in August of 2021. Unbeknownst to Kraft Heinz, Groome failed to remove a portable work light from the silo after it was cleaned. Despite not being able to account for the missing work light (nor having documents reflecting its removal), Groome failed to inform Kraft Heinz of the missing light and instead certified to Kraft Heinz that the silo was fully cleaned and ready to be returned to operation. Relying on Groome's certification, Kraft Heinz refilled the silo with fructose and commenced production of dry powder beverage mix through utilization of the silo at issue. During this production, Groome's work light was crushed into pieces under the weight of the refilled fructose, rendering millions of dollars' worth of work-in-progress products and finished goods unsalable and causing an FDA recall.

3

## FACTS

A.  **Silo Cleaning and the Parties' Contract**

12. Kraft Heinz stores fructose in large storage silos that feed the production lines for dry powder beverages such as *Kool-Aid*, *Tang* and *Country Time Lemonade*, at its Dover, Delaware manufacturing facility.

13. To ensure cleanliness and eliminate buildup of fructose inside the silos, Kraft Heinz engages vendors to perform specialized cleaning of those silos, which are several stories tall and wide enough for several individuals to fit inside. The silos narrow down at the bottom into a cone shape. A butterfly valve separates these silos from the pipes that connect to the rest of the food production system.

14. Silo cleaning is a specialized task involving trained Groome personnel being lowered into the silos using ropes and scaffolding to clean the interior walls of the silos. Groome uses portable lights to assist with the cleaning process.

15. Groome represented to Kraft Heinz that it was qualified to clean the silos and would take all necessary precautions to guard against leaving any equipment in the silos or otherwise taking any action that would negatively impact Kraft Heinz's food production process. These precautions were to be in place before, during and after the cleaning occurred.

16. On or about July 16, 2021, Kraft Heinz hired Groome to clean two silos at its production facility in Dover, Delaware. Kraft Heinz issued purchase order number 4700886771 ("Purchase Order") to Groome detailing the delivery date, quantity, unit price and total amount that Kraft Heinz would pay Groome for the silo cleaning services. A true and correct copy of this Purchase Order is attached hereto as **Exhibit B**.

4

17. Groome's Purchase Order is "governed by, and is subject to, the [Terms] effective on the date this Purchase Order is received, which are incorporated by this reference. The [Terms] are available at http://www.kraftheinzcompany.com/terms_conditions_purchase/purchase-terms.html, and a copy is also available upon request of your purchasing contact. Unless and to the extent that there is an executed agreement between the parties, acceptance of this Purchase Order includes acceptance of the [Terms]." (Exhibit B.)

18. Groome accepted all Terms, which were incorporated into the Purchase Order and agreed to provide all supervision, labor, equipment and supplies to complete the silo cleaning.

19. As part of the acceptance of these terms, Groome agreed to conduct its work in a safe and reasonable manner to protect Kraft Heinz's property from injuries, damages or losses.

20. Groome further agreed that its work would be performed in accordance with both industry standards and state and federal regulations.

21. Additionally, and upon completion of the silo cleaning, Groome agreed to remove all of its equipment used in cleaning the silo.

**B.** **Groome Failed to Remove its Portable Work Light after Cleaning**

22. Groome cleaned the first of Kraft Heinz's fructose silos in July of 2021 and the second in August of 2021.

23. At all times, Groome was fully aware the silos were to be used in the production of dry powder beverage mixes after their cleaning.

24. While cleaning Kraft Heinz's silos, Groome brought and utilized a Husky portable work light ("Husky Light") to illuminate the interior of the silos during cleaning.

25. Silo one was cleaned without incident.

26.     However, during Groome's cleaning of silo two in August 2021, Groome left its Husky Light in the bottom of the silo, where it was hidden beneath the butterfly valve at the base of the silo.

27.     Despite having the duty to be responsible for all equipment it brought into the facility, including the need for its removal after cleaning, Groome failed to either remove the Husky Light or inform Kraft Heinz that Groome had failed to remove it.

28.     Instead, Groome certified to Kraft Heinz that the silo cleaning was properly completed with all equipment removed from the silo.

### C.     The Husky Light Contamination

29.     Kraft Heinz refilled silo two with fructose product and returned it to service, but subsequently discovered foreign material in its production line and, upon emptying silo two in October of 2021, found what remained of Groome's portable Husky light and the rope to which it had been attached.

30.     Kraft Heinz determined it was necessary to issue a voluntary recall for certain *Country Time Lemonade* and *Kool-Aid* dry powder beverage mixes due to the potential presence of foreign material and notified the U.S. Food & Drug Administration ("FDA") of the incident.

31.     On November 20, 2021, after further engagement and cooperation with the FDA, Kraft Heinz expanded its recall to include additional production dates and other products, including certain *Tang* and *Arizona Tea* dry powder beverage mixes.

32.     As a result of this recall, Kraft Heinz sustained millions of dollars in damages.

### COUNT I – BREACH OF CONTRACT

33.     Kraft Heinz adopts and incorporates paragraphs 1 to 32 above as paragraph 33 of its Complaint as though fully set forth herein.

6

34. The agreement between Kraft Heinz and Groome was a lawful, binding and effective agreement.

35. Kraft Heinz agreed to pay Groome for, and Groome agreed to perform, specialized industrial cleaning services of Kraft Heinz's silos in an expert manner that would avoid the contamination of Kraft Heinz's products.

36. Kraft Heinz fully performed and satisfied all its obligations required under the agreement.

37. Groome, however, breached the agreement in one or more of the following manners:

   a. Failing to perform all services in a professional and workmanlike manner in accordance with industry standards and applicable specifications (see Exhibit A, p. 2, ¶3);

   b. Failing to remove all equipment used in cleaning the silo upon completion of the silo cleaning;

   c. Failing to properly inspect Kraft Heinz's silo for foreign material, after cleaning and prior to certification of completion;

   d. Failing to monitor and supervise the proper and safe performance of Groome's employees, including any foremen and supervisors who were responsible for overseeing the work performed by Groome's employees;

   e. Failing to perform work that complied with Kraft Heinz's policies despite representing it would do so;

   f. Failing to perform its work in accordance with industry standards and state and federal regulations;

7

    g.   Failing to take all reasonable steps to ensure that the services were provided in a manner that complied with Kraft Heinz's premises policy and further that did not restrict or prevent Kraft Heinz from operating its business with minimal disruptions (see Exhibit A, p. 2, ¶3);

    h.   Failing to comply with all laws, statutes, ordinances, codes, regulations, rules, directives and orders of any federal, state, local municipal or foreign governmental entity or agency applicable to Groome's performance of its obligations under the Purchase Order, including, without limitation, the Occupational Safety and Health Act of 1970, the rules of the Food and Drug Administration and the Illinois Sanitary Food Preparation Act (see Exhibit A, p. 2, ¶4); and

    i.   Failing to comply with Kraft Heinz's supplier quality expectation manuals.

38.    As a result of Groome's breach of the agreement, Kraft Heinz has sustained pecuniary, economic, tangible, intangible, consequential and monetary losses and will continue to sustain such losses in the future.

WHEREFORE, Kraft Heinz respectfully requests this Honorable Court enter judgment in its favor and against Groome in an amount to be determined at trial, but in excess of $75,000, and that the Court award Kraft Heinz the costs of suit, statutory pre-judgment interest and any other further relief it deems just and appropriate.

## COUNT II –INDEMNIFICATION

39.    Kraft Heinz adopts and incorporates paragraphs 1 to 38 above as paragraph 39 of its Complaint as though fully set forth herein.

40. The Parties agreed that the Purchase Order and Terms would control their relationship.

41. Under the Terms, Groome agreed to "indemnify, defend and hold harmless" Kraft Heinz" from and against all losses, damages, liabilities, settlements, judgments, demands, fines, penalties, awards, costs and expenses (including reasonable attorney's fees and court costs) arising from any claims, actions, suits, demands, or proceedings (whether or not involving a third-party) arising out of or in connection with the performance of the PO or Order, any breach of Supplier's warranties, representations, covenants or other obligations or duties contained in the PO or Order or any breach or violation of any other obligation or duty under applicable Law, negligent acts or omissions, or willful misconduct relating to the PO or Order" committed by Groome or its employees or agents. (See Exhibit A, p. 4, ¶9.)

42. Groome's conduct in leaving the Husky Light inside Kraft Heinz's silo two has caused and exposed Kraft Heinz to significant damages, including payments to customers and other losses.

43. As a result of Groome's conduct, Kraft Heinz may also be subject to additional future claims, actions, suits, demands or proceedings arising out of or in connection with the Husky Light contamination requiring Groome's indemnification and defense of Kraft Heinz.

44. Groome owes Kraft Heinz for any and all compensation for "costs and expenses (including reasonable attorney's fees and court costs)" incurred by Kraft Heinz as a result of Groome's negligent performance and breaches related to the PO, including its warranties and representations.

WHEREFORE, Kraft Heinz respectfully requests this Honorable Court enter judgment in its favor and against Groome in an amount to be determined at trial, but in excess of $75,000, and that the Court award Kraft Heinz the costs of suit, attorney's fees, statutory pre-judgment interest and any other further relief it deems just and appropriate.

## **COUNT III –NEGLIGENCE**

45. Kraft Heinz adopts and incorporates paragraphs 1 to 32 above as paragraph 45 of its Complaint as though fully set forth herein.

46. Groome owed duties to Kraft Heinz to conduct itself in a safe and proficient manner while in and around Kraft Heinz's silo consistent with its purported level of expertise, implement and follow proper guidelines, properly inspect the silo, properly train, monitor and supervise its employees, comply with federal and state laws and properly remove the Husky Light so that the silo may be used for its intended purpose and so as to not damage Kraft Heinz's other property and products.

47. Groome breached its duties to Kraft Heinz, in one or more of the following manners:

   a. Failing to perform all services in a professional and workmanlike manner in accordance with industry standards;

   b. Failing to remove all equipment used in cleaning the silo upon completion of the silo cleaning;

   c. Failing to properly inspect Kraft Heinz's silo for foreign contaminants, after cleaning and prior to certification of completion;

    d. Failing to monitor and supervise the proper and safe performance of Groome's employees, including any foremen and supervisors who were responsible for overseeing the work performed by Groome's employees;

    e. Failing to perform its work so as to not damage Kraft Heinz's property and products;

    f. Failing to perform its work in accordance with industry standards and state and federal regulations; and

    g. Failing to comply with all applicable laws, statutes, ordinances, codes, regulations, rules, directives and orders of any federal, state, local municipal or foreign governmental entity or agency, including, without limitation, the Occupational Safety and Health Act of 1970, the rules of the Food and Drug Administration and the Illinois Sanitary Food Preparation Act.

48. Groome's aforementioned breaches and related conduct directly and proximately caused contamination of and damage to Kraft Heinz's dry powder beverage mix products. As a result of the contamination, Kraft Heinz has sustained, and will sustain, significant damage in the form of lost production, lost products, lost profits, lost ingredients, loss of reputation, production disruptions, product recall, cleaning and sanitation costs, legal costs and expenses, damages to Kraft Heinz property and exposure to potential lawsuits and claims.

WHEREFORE, Kraft Heinz respectfully requests this Honorable Court enter judgment in its favor and against Groome in an amount to be determined at trial, but in excess of $75,000, and that the Court award Kraft Heinz the costs of suit, statutory pre-judgment interest and any other further relief it deems just and appropriate.

                     Respectfully submitted,

Dated: March 11, 2022        By:  /s/ P. Stephen Fardy
                     One of the Attorneys for Plaintiff
                     Kraft Heinz Foods Company

P. Stephen Fardy, #6230900
Arthur J. Reliford, Jr. # 6270485
David S. Goles #6256012
Mark J. McLoughlin, #6294293
**SWANSON, MARTIN & BELL, LLP**
330 North Wabash, Suite 3300
Chicago, Illinois 60611
312- 321-9100
sfardy@smbtrials.com
areliford@smbtrials.com
dgoles@smbtrials.com
mmcloughlin@smbtrials.com



# STANDARD TERMS AND CONDITIONS OF PURCHASE – UNITED STATES

These Standard Terms and Conditions of Purchase are incorporated into and made a part of the Purchase Order ("**PO**") or the Service Order or other order ("**Order**") by and between the entity identified as supplier, vendor, manufacturer, distributor, seller or other similar designation on the PO or Order ("**Supplier**") and Kraft Heinz Foods Company (or the affiliate specified on the PO or Order) ("**Kraft Heinz**"). The term "**party**" herein refers to either Kraft Heinz or Supplier, and the term "**parties**" herein refers to both Kraft Heinz and Supplier.

Kraft Heinz agrees to purchase and Supplier agrees to sell the products, goods, materials, ingredients, parts, items, or equipment ("**Products**") and/or perform the services ("**Services**") specified on the PO or Order. Supplier accepts the PO or Order by informing Kraft Heinz of its acceptance, beginning to perform under it, or otherwise taking any action that would constitute acceptance under applicable Laws.

1. **PO/Order Structure; Entire Agreement; Amendment.** The PO or Order consists of: these Standard Terms and Conditions of Purchase; the provisions on the cover page of the PO or Order containing the link to these Standard Terms and Conditions of Purchase (also referred to herein as the "**face**" of the PO or Order); any exhibits or attachments to such PO or Order; and any documents incorporated by reference herein or therein. The PO or Order constitutes the entire agreement between the parties with respect to the Products and Services ordered thereunder and supersedes all prior or contemporaneous understandings, negotiations, communications, and agreements, with respect to the subject matter thereof. Kraft Heinz rejects any and all additional, different, or inconsistent terms or conditions contained in or incorporated into any quotations, acknowledgements, invoices or any other business document or form (electronic or otherwise) that Supplier provides to solicit the PO or Order from Kraft Heinz or sends in response to the PO or Order. No amendment, deletion, supplement or change to the PO or Order by Supplier will be binding unless in a written document signed by both Kraft Heinz and Supplier. Notwithstanding the foregoing, if the PO or Order references an agreement in effect between Kraft Heinz (or its affiliate) and Supplier, the terms of that agreement will apply with respect to the sale and purchase of Products and/or the performance of Services under the PO or Order, and these Standard Terms and Conditions of Purchase will not apply.

2. **Prices and Payment.** Supplier will sell Products and/or Services to Kraft Heinz at the price stated in the PO or Order, which Supplier agrees will not be higher than the price Supplier charges similar customers for similar volumes. The price includes all costs to be charged to Kraft Heinz, unless Kraft Heinz agrees in advance in writing to reimburse Supplier for specific out-of-pocket costs, in which case Supplier will list such costs on the invoice without mark-up after any discount or rebate and provide copies of original receipts if any such costs exceed US$25, or otherwise upon Kraft Heinz's request.

Supplier will invoice Kraft Heinz for Products only after Supplier has delivered them, and for Services only after Supplier has completely performed them. Each invoice must include information Kraft Heinz reasonably requests.

Unless otherwise specified on the face of the PO or Order, payment terms are 90 days from the end of the month in which Kraft Heinz receives acceptable Products and/or Services or a correct invoice, whichever is later, plus 7 days. Kraft Heinz has no obligation to pay invoices Kraft Heinz receives for Products or Services more than 6 months after they are delivered or performed. Kraft Heinz may withhold disputed amounts under the PO or Order until the dispute is resolved, and Kraft Heinz may offset any amounts Supplier or its affiliates owe Kraft Heinz.

3. **Warranties, Representations, and Covenants.** Supplier represents and warrants that all Products and their packaging will: (a) strictly comply with Kraft Heinz's specifications (or Supplier specifications that Kraft Heinz has approved if no Kraft Heinz specifications are to be provided); (b) be of new material, good quality and workmanship, and free from defects; (c) not impart any unintended flavor, odor, or color to any Kraft Heinz finished goods (whether from the Products delivered or their packaging); (d) be fit for the use intended by Kraft Heinz (including fit for human consumption where such is intended); (e) conform to all samples approved by Kraft Heinz; (f) be provided to Kraft Heinz with good title, free and clear of any liens and encumbrances; (g) be produced at a facility approved in advance by Kraft Heinz; (i) not, to Supplier's knowledge, cause exposure to any chemical determined under the California Safe Drinking Water and Toxic Enforcement Act of 1986 and its regulations and amendments (commonly known as Prop 65) to cause cancer or reproductive toxicity; (j) not infringe,

1   EXHIBIT A



nor will Kraft Heinz's use of them infringe, the intellectual property rights of any third party; and (k) strictly comply with any other warranty, representation and/or covenant that Supplier has expressly extended to Kraft Heinz regarding the Products or Services.

Supplier will comply with applicable Kraft Heinz Supplier Quality Expectations Manuals, security guidelines and other guidelines that Kraft Heinz broadly requires its suppliers to meet, which are incorporated herein by reference (including ingredient-specific and external manufacturing requirements). Supplier acknowledges receiving the manuals and specifications, which are made a part of the PO or Order. Such manuals and specifications may be changed by Kraft Heinz upon notice to Supplier, and Supplier must comply with any changed manuals and specifications within 30 days of receiving notice. Supplier will inform Kraft Heinz immediately (and provide any relevant information and documentation) if Supplier learns of any potential quality, safety or labeling problem with Products or any potential violation of Supplier's obligations in the PO or Order.

Supplier represents and warrants Services provided under the PO or Order (a) will be performed diligently and in a professional and workmanlike manner in accordance with the provisions of the PO or Order, industry standards, and applicable specifications and (b) will not infringe, nor will Kraft Heinz's use of them infringe, the intellectual property rights of any third party. Supplier will not create or permit any liens or third-party security interests affecting the Services or any deliverables provided in connection with the Services, Kraft Heinz, or any materials or equipment Kraft Heinz provides for the Services. Additionally, Supplier must comply with any and all of Kraft Heinz's policies relating to the premises where Services are to be performed and must take all reasonable steps to ensure that Services are provided in a manner that does not restrict or prevent Kraft Heinz from carrying on its business and that minimizes disruptions.

Supplier hereby assigns to Kraft Heinz any warranties related to Products and/or Services, or if Supplier cannot assign them, Supplier agrees to make claims under them on Kraft Heinz's behalf at the request of Kraft Heinz. Supplier will ensure that its employees, contractors, subcontractors, and agents comply with the PO or Order and, when at a Kraft Heinz premises, the safety and security requirements of Kraft Heinz.

**4. Compliance with Law.** Supplier will comply with all laws, statutes, ordinances, orders, codes, regulations, rules, regulations, directives, and orders of any federal, state, local, municipal or foreign governmental entity or agency ("**Laws**") applicable to Supplier's performance of its obligations under the PO or Order, including, without limitation, the production, manufacturing, packaging, storage, shipment, and sale of the Products or the provision of Services.

Supplier represents and warrants that all foods (or substances provided for use in or for foods) comprising each shipment or other delivery made to (or on the order of) Kraft Heinz will not, as of the date of such shipment and delivery: (i) be adulterated or misbranded within the meaning of the U.S. Federal Food, Drug and Cosmetic Act of 1938, as amended (the "**FFDCA**") and the U.S. Federal Fair Packaging and Labeling Act of 1966, as amended (together with the FFDCA, the "**Federal Acts**"), or any other food or drug Laws under which the adulteration and misbranding provisions are substantially the same as those found in the Federal Acts; or (ii) be or contain an article that may not be introduced into interstate commerce under the FFDCA. Upon the request of Kraft Heinz, Supplier will sign pure food guarantees provided by Kraft Heinz which are generally consistent with the FFDCA.

Supplier further represents and warrants that Supplier and its employees, officers, directors, contractors, subcontractors, agents, and other representatives will comply with all applicable anti-corruption Laws (including the U.S. Foreign Corrupt Practices Act, the U.K. Bribery Act of 2010 and the Canada Corruption of Foreign Public Officials Act) and Supplier further represents and warrants that neither Supplier, nor any of its employees, officers, directors, contractors, subcontractors, agents, or other representatives, have made any payments in connection with the PO or Order which could violate any applicable anti-corruption Laws.

Supplier expressly warrants that it is selling or furnishing the Products and/or Services in full compliance with the Occupational Safety and Health Act of 1970, as amended, and all standards, rules, regulations, and orders issued pursuant thereto, and all other federal and state occupational safety and health Laws, the provisions of which are substantially the same as those found in such Act or administered by any state pursuant to that Act. Supplier will furnish Kraft Heinz with a Material Safety Data Sheet with each shipment, delivery, or provision of a hazardous chemical or hazardous material to Kraft Heinz in strict compliance with the hazard communication regulations of the Occupational Safety and Health Administration of the U.S. Department of Labor and any and all state and local hazard communication, right-to-know, and similar and related Laws.



If standard practice of Supplier or requested by Kraft Heinz, Supplier will certify, at the time of delivery or invoicing, that Products sold hereunder were manufactured or produced in full compliance with the Fair Labor Standards Act of 1938, as amended to the date of certification, and all applicable United States Department of Labor rules, regulations or guidelines thereunder.

5.  **Materials and Other Resources.**  Unless Kraft Heinz provides Supplier with materials, equipment or tooling in connection with the PO or Order, Supplier, at its sole cost and expense, will obtain all necessary materials, equipment, tooling, ingredients, personnel, and supplies to perform its obligations under the PO or Order.  Kraft Heinz may direct Supplier to purchase materials from certain suppliers and Supplier will do so unless it would cause Supplier to breach its existing contracts.  Supplier will only use such materials to perform under the PO or Order and will pass through to Kraft Heinz any rebates or other savings Supplier receives as a result.  If Kraft Heinz provides Supplier with any materials, equipment or tooling in connection with the PO or Order: (i) they are provided "AS IS", (ii) they will remain Kraft Heinz property, (iii) Supplier will maintain them in good condition (normal wear and tear excepted), (iv) Supplier will ensure they remain free of any liens or security interests, (v) Supplier will only use them in connection with the PO or Order, and (vi) Supplier will return them to Kraft Heinz in good condition (normal wear and tear excepted) or otherwise dispose of them as Kraft Heinz directs.  Using materials, equipment, or tooling provided by Kraft Heinz or using a supplier directed by Kraft Heinz will not relieve Supplier of any of its obligations under the PO or Order or shift any liability from Supplier to Kraft Heinz.

6.  **Changes and Cancellations; Suspension.**  Before Supplier delivers Products or performs Services, Kraft Heinz may request changes.  If Kraft Heinz or Supplier can demonstrate that such change will impact Supplier's ability to timely deliver Products or perform Services, Kraft Heinz and Supplier will negotiate an equitable adjustment to the delivery schedule for such Products or the performance schedule for such Services, as applicable.  Kraft Heinz may cancel the PO or Order with respect to any Products not yet delivered or Services not yet performed by notifying Supplier (unless otherwise specified on the face of the PO or Order).  After Kraft Heinz notifies Supplier, Supplier will take all reasonable steps to minimize costs due to Kraft Heinz's cancellation.  As Supplier's exclusive remedy for cancellation, Kraft Heinz will pay Supplier for Supplier's unavoidable costs incurred before receiving notice of cancellation (less any savings realized from Kraft Heinz's cancellation or related mitigation efforts) that Supplier can document to Kraft Heinz's reasonable satisfaction.

Kraft Heinz may suspend the PO or Order immediately on notice to Supplier if Kraft Heinz reasonably believes that Supplier's action or omission causes a health, security, or safety concern, or results (or will likely result) in a recall or market withdrawal of Kraft Heinz finished goods.  Kraft Heinz may suspend such PO or Order until such time as Kraft Heinz is satisfied that the action, omission, or breach has been adequately remedied.

7.  **Shipping and Delivery.**  Time is of the essence with respect to Supplier's obligations under the PO or Order.  All Products will be delivered and Services performed on weekdays during Kraft Heinz normal business hours, unless otherwise stated on the PO or Order.

All Products will ship F.C.A. Kraft Heinz's designated delivery location, unless otherwise stated on the PO or Order.  Supplier must properly package Products for shipment and properly label all units with Supplier's name, description of Products, PO or Order number and any other identifying information Kraft Heinz requires.  Supplier will provide accurate and complete information on all shipping and customs documents, including a description of the Products, country of origin and manufacture, currency, and delivery terms.  Except as the PO or Order otherwise expressly provides, title to and risk of loss on Products will pass to Kraft Heinz at the f.o.b. point designated on the face of the PO or Order.

8.  **Non-Compliant and Defective Products or Services.**  If any quantity of Products is defective, fails to comply with any of the warranties, representations, and covenants set forth in Section 3, or does not conform to samples, descriptions, specifications or other requirements of the PO or Order, Kraft Heinz may, at its option and without prejudice to any other right and remedy available at law or in equity, reject all of such quantity, accept all of such quantity, or accept any commercial unit or units of such quantity and reject the rest.  Supplier will reimburse Kraft Heinz in full for the quantity of Products rejected within 30 days of notice of rejection, and/or upon Kraft Heinz's request and at Supplier's sole expense, replace or satisfactorily repair the quantity of Products rejected by Kraft Heinz within 10 days of notice of rejection.  Supplier will assume any and all costs of transportation and handling both ways for rejected Products and any other related expenses, including incremental storage and handling costs, with title and

3



risk of loss passing to Supplier at Kraft Heinz's location, unless Kraft Heinz otherwise specifies at the time of return. Supplier will, at its own expense, dispose of rejected Products in accordance with Kraft Heinz's direction.

If any of the Services are defective, fail to comply with any of the warranties, representations, and covenants set forth in Section 3, or do not conform to specifications or other requirements of the PO or Order, Kraft Heinz may, at its option and without prejudice to any other right or remedy available at law or in equity, reject all or any part of such Services. Supplier will, at Kraft Heinz's option, re-perform such Services at no additional cost or provide a refund to Kraft Heinz in the amount of the price paid for the Services.

9. **Indemnification.** Supplier will indemnify, defend and hold harmless Kraft Heinz, its affiliates, and their respective employees, officers, directors and agents from and against all losses, damages, liabilities, settlements, judgments, demands, fines, penalties, awards, costs and expenses (including reasonable attorney's fees and court costs) arising from any claims, actions, suits, demands, or proceedings (whether or not involving a third-party) arising out of or in connection with the performance of the PO or Order, any breach of Supplier's warranties, representations, covenants or other obligations or duties contained in the PO or Order or any breach or violation of any other obligation or duty under applicable Law, negligent acts or omissions, or willful misconduct relating to the PO or Order by Supplier, its employees, officers, directors, contractors, subcontractors or agents.

10. **Insurance.** During the term of the PO or Order and for one year thereafter, Supplier will, at its own expense, maintain the insurance coverage types and amounts specified below:

(a) Workers' Compensation Insurance – Statutory;

(b) Employer's Liability Insurance in an amount not less than: US$500,000 - Each Accident, US$500,000 - Disease Policy Limit, US$500,000 - Disease Each Employee;

(c) Commercial General Liability Insurance (including Contractual Liability, Products/Completed Operations, and Personal Injury coverages) with minimum limits of liability of US$5,000,000 for any one occurrence and US$5,000,000 in the aggregate;

(d) Automobile Liability Insurance covering owned, non-owned, rented, and hired vehicles — combined single limit of US$2,000,000 for each accident, with a combined single limit for bodily injury and property damage (Note: if no vehicle is used for the provision of Products and/or Services under this PO, this coverage requirement can be waived); and

(e) *If Supplier is a licensed professional (e.g., auditor, consultant, designer, engineer, software developer, etc.)* Professional Liability Insurance covering liability for damages caused by an error, omission, or negligent act in the provision of the Products and/or the performance of Services with minimum limits of liability of US$5,000,000 per occurrence and US$5,000,000 in the aggregate.

Supplier must obtain the required insurance from reputable insurers that (i) are licensed to do business in the locations in which Supplier's obligations hereunder are fulfilled and (ii) have a rating of at least "A-" from the AM Best rating service or its equivalent. Supplier will ensure that Kraft Heinz is named as an additional insured and that Supplier insurance carriers waive rights of subrogation against Kraft Heinz's insurance. Supplier may use primary plus umbrella coverage to satisfy the required limits. Supplier will cause its insurers to issue certificates of insurance evidencing that the coverages and policy endorsements required under the PO are maintained and that not less than 30 days' written notice will be given to Kraft Heinz prior to any cancellation or non-renewal of the policies.

11. **Dispute Resolution and Governing Law.** The Laws applying to contracts made and fully performed in the State of Illinois will govern the PO or Order. The provisions of the United Nations Convention on Contracts for the International Sale of Goods will not apply to the PO or Order. If Kraft Heinz and Supplier cannot resolve a dispute regarding the PO through good faith negotiation, any legal action or proceeding arising out of or relating to the PO or Order will be brought exclusively in the U.S. District Court for the Northern District of Illinois (unless that court does not have jurisdiction over the action or proceeding, in which case the action or proceeding will be brought exclusively in state court in Cook County, Illinois), and each party irrevocably submits to the sole and exclusive jurisdiction of these courts in any action or proceeding. The parties waive their right to a jury trial in any action or proceeding arising out of or related to the PO or Order.



**12. Force Majeure Events.** If either party is unable to perform its obligations under the PO or Order due to any act of God, fire, casualty, flood, earthquake, war, epidemic, riot, insurrection, or any other cause beyond its reasonable control ("**Force Majeure Event**"), that party will promptly notify the other party in writing, its performance under the PO or Order will be temporarily excused. The affected party will make reasonable efforts to mitigate the effects of the Force Majeure Event and to resume performance as soon as practicable. If the inability to perform continues for more than 20 days, the other party may cancel the PO or Order immediately, without costs or penalty, by giving written notice to the affected party. Unexpected cost increases caused by events or changing market conditions, and labor strikes, work slowdowns, or other job actions at Supplier's facility are not a Force Majeure Event.

**13. Audit Rights.** At any time until the expiration of one year after the final payment under the PO or Order, Kraft Heinz may audit Supplier records and inspect Supplier's facilities related to the PO or Order in order to: (i) evaluate Supplier's quality and food protection procedures and compliance with applicable specifications and manuals ("**Quality Audit**"), (ii) evaluate Supplier's compliance with the Kraft Heinz Supplier Guiding Principles as referenced in Section 24 below ("**SGP Audit**"), and (iii) verify that pricing, pass-through costs, reimbursable expenses, or other financial provisions conform to the PO or Order ("**Financial Audit**"). Audits may be conducted by Kraft Heinz or third-party auditors, as determined by Kraft Heinz, and Supplier will not request that any auditor sign an additional agreement in order to conduct the audit. Kraft Heinz may also require that Supplier complete a questionnaire either in lieu of or in advance of an audit or that Supplier register with and submit information to a third-party that Kraft Heinz has selected to manage audit information. For SGP Audits and Quality Audits, Kraft Heinz will bear its own internal costs, and Supplier will bear its own internal costs and all other audit costs (including those of any third-party auditor). For Financial Audits, Kraft Heinz will bear its own internal costs and the cost of the auditors, unless Kraft Heinz discovers any deficiency or non-compliance as to the PO or Order, in which case Supplier will promptly pay any overcharges and reimburse Kraft Heinz's reasonable audit costs. In the event of a finding of deficiency or non-compliance, in addition to any other right or remedy of Kraft Heinz, Supplier will promptly take all corrective action that Kraft Heinz reasonably requires and Kraft Heinz or its representative may audit Supplier's facilities or records as often as reasonably necessary to verify correction. Kraft Heinz may suspend performance under the PO or Order until any deficiency or non-compliance is corrected, in addition to other remedies Kraft Heinz may have. If Supplier refuses any audit, Kraft Heinz can withhold payment.

**14. Confidential Information.** Supplier acknowledges that in the provision of Products or Services, Kraft Heinz may provide, or Supplier may otherwise obtain or see, non-public information, materials, or data that Kraft Heinz considers proprietary and/or confidential ("**Confidential Information**"). Supplier will maintain all Confidential Information that it has seen or received or will in the future see or receive in the strictest confidence, and Supplier will not use Confidential Information or other information provided by Kraft Heinz, except as necessary to perform its obligations under the PO or Order. Supplier agrees to only disclose Confidential Information to its employees or agents as and to the extent necessary to enable Supplier to perform under the PO or Order. Supplier will inform each of its employees and agents that have access to such Confidential Information of the obligations under this Section and Supplier will obtain the agreement of each such employee or agent to comply with the provisions of this Section. Supplier will be responsible for any breach of this Section by any employee, agent, or representative. Kraft Heinz owns the Confidential Information and Supplier must return or destroy it (including all copies thereof) if requested by Kraft Heinz. Except as provided with respect to an audit in accordance with Section 13 above (in which case only the technical information identified in writing and which Kraft Heinz needs to know will be disclosed) or upon Kraft Heinz's prior written consent, Supplier agrees and acknowledges that it will not provide to Kraft Heinz any Supplier or third-party confidential technical information.

**15. Custom Work.** If Supplier creates, produces, or develops tangible or intangible work product or deliverables for Kraft Heinz under the PO or Order, makes modifications to the specifications or any process related to Products and/or Services specifically for Kraft Heinz, or makes modifications to Confidential Information or intellectual property of Kraft Heinz ("**Custom Work**"), Kraft Heinz owns such Custom Work. Supplier hereby assigns all rights, title and interest in the Custom Work to Kraft Heinz and represents and warrants that: (a) the Custom Work was developed through Supplier's sole and original efforts and does not infringe the intellectual property or privacy rights of any person, and (b) Supplier has no other arrangements that would interfere with assigning all of Supplier's interest in the Custom Work to Kraft Heinz.

5



**16.     Taxes.**  Unless both parties agree otherwise in writing, each party will be responsible for its own respective taxes as required by applicable Laws.  If Supplier is required to charge tax (e.g., state sales tax) or if Kraft Heinz is required to withhold tax, then the party required to remit such tax to a governmental authority having responsibility for assessment or collection of such tax will give the other party the opportunity to demonstrate (and document) how such charge or withholding may be mitigated (for example, by providing a sales tax exemption certificate).  Any taxes charged to Kraft Heinz must be separately stated on the applicable invoice.

Kraft Heinz may delay payment under the PO or Order if Supplier fails to comply with any written request to provide information or take other actions reasonably necessary for Kraft Heinz to satisfy tax reporting obligations, imposed on, or with respect to, payments made pursuant to or in connection with the PO or Order.

**17.     Assignment and Subcontracting.**  Supplier will not assign, delegate, subcontract, or otherwise transfer the PO or Order (or any portion of the PO or Order) or any of its rights or obligations under the PO or Order, without Kraft Heinz's prior written consent.  Any attempted assignment, delegation, or transfer by Supplier without Kraft Heinz's prior written consent will be invalid.  Supplier will ensure that all material terms of the PO or Order pertaining to the subcontracting of the manufacture and/or supply of any Products or performance of Services are incorporated into any subcontract.  Any permitted subcontracting will not relieve Supplier of any of its duties, obligations, responsibilities and/or liabilities under the PO or Order.

Kraft Heinz may freely assign all or any portion of the PO or Order without Supplier's consent and will not be liable for any obligations under the PO or Order that arise after the assignment.  Any successors or permitted assigns will be bound by the terms and conditions of the PO or Order.

**18.     No Third-Party Beneficiaries.**  Except as set out in Section 9 above, the PO or Order gives no rights or benefits to anyone other than Kraft Heinz and Supplier and their respective successors and assigns.  There are no other third-party beneficiaries under the PO or Order.

**19.     Non-Exclusivity; Aggregation.**  Unless otherwise stated on the face of the PO or Order, the PO or Order is not exclusive, and either party is free to enter into similar agreements with any other party.  Purchases under the PO or Order and any other POs/Orders with Supplier will be aggregated for purposes of calculating any volume discounts or rebates.

**20.     Independent Contractor.**  The PO or Order does not create a partnership, joint venture, employment relationship, or other similar relationship between the parties and any of their respective employees.  Each party is an independent contractor to the other party, has no authority to bind the other party, and is solely responsible for its respective employees, directors, officers, contractors, subcontractors and agents.

**21.     Severability.**  If any part of the PO or Order cannot legally be enforced, then Kraft Heinz and Supplier agree that the provision will be deemed modified as necessary to make it enforceable while remaining as consistent as possible with the intent as expressed in the PO or Order.

**22.     Waiver.**  No waiver by Kraft Heinz of any breach of a provision of the PO or Order will be deemed to constitute a waiver of any other breach of such provision or any other provision of the PO or Order.  Any waiver by Kraft Heinz must be in writing.

**23.     Survival.**  The completion or cancellation of the PO or Order will not affect any rights and obligations which by their nature should continue to survive.

**24.     Supplier Guiding Principles Compliance.**  Supplier will comply with the Kraft Heinz Supplier Guiding Principles, which are published at https://www.kraftheinzcompany.com/ethics_and_compliance/supplier-guiding-principles.html (as such Principles may be updated from time to time by posting changes on the site) in performing under the PO or Order.

**25.     Federal Contractor Responsibilities.**  Kraft Heinz must comply with certain legal provisions because it has contracts with the U.S. government.  **To the extent applicable and if Supplier is not exempt, Supplier will abide by the requirements of 41 CFR §§ 60-1.4(a), 60-300.5(a) and 60-741.5(a).  These regulations prohibit discrimination against qualified individuals based on their status as protected veterans or individuals with disabilities, and prohibit discrimination against all individuals based on their race, color, religion, sex, or national origin.  Moreover, these regulations require that covered prime contractors and subcontractors take affirmative action to employ and advance in employment individuals without regard to race, color, religion, sex, national origin, protected**



**veteran status or disability.** To the extent applicable and if Supplier is not exempt, Supplier also agrees to comply with the regulations set forth in 41 C.F.R. Parts 60-1 through 60-60 (women and minorities); 29 U.S.C. Section 793 and the applicable regulations contained in 41 C.F.R. Part 60-741 (individuals with disabilities); 38 U.S.C. Section 4212 and the applicable regulations contained in 41 C.F.R. Part 60-300 (covered veterans); the employee notice requirements set forth in 29 C.F.R. Part 471, Appendix A; FAR 52.203-13 & 15 (code of business ethics and conduct); 52.219-8 (utilization of small business concerns); 52.222-50 (combatting trafficking in persons); 52.226-6 (promoting excess food donations to nonprofit organizations); and 52.247-64 (preference for privately owned U.S. flag commercial vessels). Kraft Heinz may modify these requirements at any time as reasonably required by changes in U.S. Laws.

**26.     Personnel Criteria**  Supplier will not assign any person to perform work under the PO or Order unless he or she: (a) is qualified to perform all of the essential functions of the assigned duties for the provision of Products and/or Services under the PO or Order (subject to any duty to accommodate under applicable Laws); (b) is legally entitled to work in the country in which he or she is employed; and (c) has either worked for Supplier for at least one year prior to assignment or meets Supplier's standard criminal background check requirements (subject to restrictions imposed by applicable Laws). Supplier will cooperate with Kraft Heinz's reasonable efforts to assess Supplier's compliance with this provision and, upon request by Kraft Heinz, Supplier will certify its compliance with the foregoing.

**27.     Drug Free Workplace.** Supplier will have and enforce a zero tolerance policy for use of illegal drugs in the workplace with respect to any person involved with the provision of Products and/or Services under the PO or Order (subject to restrictions imposed by applicable Laws). Supplier will cooperate with Kraft-Heinz's reasonable efforts to assess Supplier's compliance with this provision and, upon request by Kraft Heinz, Supplier will certify its compliance with the foregoing.

**28.     Employing Minority Vendors.** Supplier will use commercially reasonable efforts to engage vendors and subcontractors qualified by the National Minority Supplier Development Council, Women's Business Enterprise National Council, or any similar certifying state/local agencies in providing Products and/or Services to Kraft Heinz. Upon the request of Kraft Heinz or its designee, Supplier will provide information to Kraft Heinz identifying such qualified parties and the amount Supplier paid to them. Kraft Heinz may report these payments in the amounts Kraft Heinz reports as paid to qualified minority contractors (in which case Supplier will not include such payments in its reports).

**29.     Cumulative Remedies.** The rights and remedies of Kraft Heinz under the PO or Order are cumulative and are in addition to any other rights and remedies available at law, in equity, or otherwise.

# Purchase Order

Kraft Heinz Foods Company
200 East Randolph
Chicago IL 60601-6436
USA

Page No 1 of 1

**PURCHASE ORDER NO:** 4700886771  **DATE:** 16 JUL 2021

| Supplier: | Deliver To: | All Invoices to be submitted to: |
|---|---|---|
| GROOME INDUSTRIAL SERVICE GROUP LLC<br>GROOME INDUSTRIAL SERVICE GROUP LLC<br>22 AUDREY PL<br>FAIRFIELD NJ 07004-3416<br>USA | Kraft Foods Group Brands LLC<br>DOVER DE MU<br>1250 W NORTH ST<br>DOVER DE 19904-7756<br>USA | Accounts Payable<br>Kraft Heinz Foods Company<br>PO Box 982140<br>El Paso TX 79998-2140<br>USA<br><br>**OB10 Account Number: AAA728420464** |

| Vendor Contact:<br>Telephone:<br>E-mail: jbause@groomeindustrial.com | Purchaser Contact: Charles Mariner<br>Telephone:<br>E-mail: charles.mariner@kraftheinz.com | Payment Terms:<br>Due 7th day of month after 3 months | Delivery Terms:<br>Delivered Duty Paid |
|---|---|---|---|

| Item No | Item | Description | Delivery Date | Quantity | Unit of Measure | Unit Price | Total Price USD |
|---|---|---|---|---|---|---|---|
| 1 | | Beverages Silo cleaning | 31 AUG 2021 | 24,520 | each | 1.00 | 24,520.00 |
| | | | | | | TOTAL | 24,520.00 |

| VAT NO: | Signature: | |
|---|---|---|
| All materials and substances brought onto any Kraft Heinz site must be in the appropriate container and accompanied by the relevant documentation and labelling to meet all current health and safety regulations. | If for any reason this order cannot be executed on the date specified, please notify the contact person identified above. | This Purchase Order is governed by, and is subject to, the Kraft Heinz Standard Terms and Conditions of Purchase effective on the date this Purchase Order is received, which are incorporated by this reference. The Kraft Heinz Standard Terms and Conditions of Purchase are available at http://www.kraftheinzcompany.com/terms_conditions_purchase/purchase-terms.html, and a copy is also available upon request of your purchasing contact. Unless and to the extent that there is an executed agreement between the parties, acceptance of this Purchase Order includes acceptance of the Kraft Heinz Standard Terms and Conditions of Purchase. |

EXHIBIT B